IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Columbia River Bank,

                    Plaintiff,                          3:13-cv-00109-PK

v.                                                      OPINION AND ORDER

BONNIE FLETCHER et al.,

                    Defendants.

_____

PAPAK, Magistrate Judge:

        Plaintiff Federal Deposit Insurance Corporation ("FDIC") filed this action in its capacity

as receiver for Columbia River Bank ("CRB" or "the Bank") against CRB's former officers and

directors —specifically, Bonnie Fletcher, Howard L. Harris, James McCall, Nancy O'Connor,

Anthony J. Tarnasky, Britt W. Thomas, Charles F. Beardsley, William A. Booth, James T.

Doran, and Roger Christensen (collectively, "defendants").  Now before the court is the FDIC's

Page 1 - OPINION AND ORDER

motion to strike certain of defendants' affirmative defenses (#33).[1]  For the reasons set forth

below, the motion is granted in part, denied in part, and denied without prejudice in part.

## BACKGROUND

CRB was an Oregon state-chartered bank established in 1977.  CRB was closed and the

FDIC appointed as receiver on January 22, 2010.

Defendants were officers and directors of CRB at times from 1997 through the closing of

CRB, with the responsibility of operating and managing the Bank, including its lending

activities.  From 2006 to 2008, varying defendants allegedly reviewed and approved seventeen

transactions consisting of loans and a line of credit for agriculture, commercial real estate, and

acquisition, development, and construction.  The loans ultimately resulted in millions of dollars

of losses to CRB.

On January 18, 2013, the FDIC filed the complaint (#1).  In the complaint, the FDIC

contends that defendants: (1) over-invested in commercial real estate and acquisition,

development, and construction loans; (2) failed to establish appropriate policies and procedures

to evaluate, manage, and mitigate the associated risk; and (3) failed to recognize and react to the

declining real-estate market.  The FDIC asserts claims against all defendants for gross negligence

pursuant to 12 U.S.C. § 1821(k) and breach of fiduciary duty pursuant to Oregon law.  The FDIC

also asserts a claim against the Bank officers for ordinary negligence pursuant to Oregon law.[2]

---

[1]  The motion is titled a motion for judgment on the pleadings or, alternatively, a motion
to strike.  At oral argument, however, the parties agreed that the court could construe the motion
as a motion to strike.

[2]  Under Oregon law, articles of incorporation may limit the personal liability of directors
except for willful, disloyal, or bad-faith conduct.  Or. Rev. Stat. § 60.047(2)(d).  CRB's Restated
Articles of Incorporation shield its directors from liability for ordinary negligence.  Thus, the

On July 11, 2013, defendants filed an answer (#30), asserting various affirmative defenses.  Relevant to the instant motion are defendants' fifth, sixth, seventh, eighth, and twelfth affirmative defenses:

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Third Claims for Relief, and each of them, attempt to impose personal liability upon defendants for alleged damages resulting from intervening events that were historic, global, unforseen, and unforeseeable by countless reasonable persons, including the Federal Deposit Insurance Corporation in its pre-receivership corporate capacity ("FDIC-C"), Oregon Division of Finance and Corporate Securities ("ODFCS"), and other government agencies and regulators charged with monitoring and regulating financial institutions.  Such agencies failed to take preventative steps to avoid the disastrous decline in real estate value nationally, the near-collapse of global credit markets, and the epidemic failure of the financial institutions they were responsible for regulating.  All of the aforementioned caused the alleged damages sought by Plaintiff.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Third Claims for Relief, and each of them, are barred, in whole or in part, because Plaintiff's alleged damages, if any, were not proximately caused by any wrongdoing on the part of defendants.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Third Claims for Relief, and each of them, are barred, in whole or in part, because of defendants' reasonable reliance on bank examiners and regulators, including but not limited to the FDIC-C and ODFCS, which, prior to the economic collapse in the real estate market, approved of defendants' management practices.

/ / /

---

FDIC is pursuing a negligence claim only against CRB's officers.

### EIGHTH AFFIRMATIVE DEFENSE

Without admitting that Plaintiff suffered damages in any amount, or that any other defendant, person, or entity is or should be liable for any such damages, defendants' liability, if any, should be reduced under the doctrine of comparative negligence.

. . . .

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's First, Second, and Third Claims for Relief, and each of them, are barred, in whole or in part, to the extent that Plaintiff, the ODFCS, the FDIC-C, or others failed, neglected, or refused to mitigate damages as required by law.

Answer, #30, at 18-20.

On August 9, 2013, the FDIC filed the instant motion, requesting that the court strike defendants' fifth, sixth, seventh, eighth, and twelfth affirmative defenses.[3] On September 5, 2013, defendants filed a resistance (#37). On September 30, 2013, the FDIC filed a reply (#40). On October 21, 2013, the court heard oral argument on the motion. The matter is fully submitted and ready for decision.

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on its own initiative or pursuant to a party's motion. Fed. R. Civ. P. 12(f). The disposition of a

---

[3] In the motion, the FDIC also requests that the court strike defendants' thirteenth affirmative defense, which alleges that the FDIC's seizure of CRB prevented defendants from mitigating damages. In their resistance, defendants state that they do not intend on pursuing their thirteenth affirmative defense and at oral argument defendants stipulated to striking such defense. Accordingly, I shall grant the FDIC's motion to the extent it requests that I strike defendants' thirteenth affirmative defense.

Page 4 - OPINION AND ORDER

motion to strike is within the discretion of the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990). Motions to strike are disfavored and infrequently granted. *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty., Ltd.*, 647 F.2d 200, 201 & n.1 (D.C. Cir. 1981) (per curiam); *J&J Sports Prods., Inc. v. Nguyen*, No. 13-CV-02008-LHK, 2014 WL 60014, at *2 (N.D. Cal. Jan. 7, 2014).

## DISCUSSION

The FDIC argues that defendants' fifth, sixth, seventh, eighth, and twelfth affirmative defenses fail as a matter of law because these defenses "rely on the existence of a duty owed to officer and director [d]efendants by the FDIC in its . . . receivership capacity. However, courts consistently hold that . . . receivers owe no such duty." FDIC's Memo. in Support of Motion, #34, at 4. Moreover, the FDIC argues that the defenses fail under the "discretionary function exception" to the Federal Tort Claims Act ("FTCA") and the Oregon Tort Claims Act ("OTCA"). *Id.* In its reply, the FDIC also raises the argument that the court should strike defendants' fifth and seventh affirmative defenses in light of defendants' concession in their resistance that there is no support in the law for challenging the pre-receivership conduct of the FDIC and, furthermore, that the court should strike defendants' sixth and eighth affirmative defenses because they are redundant, unnecessary, or inadequately pleaded. I shall examine each of the FDIC's arguments in turn.

## I.     No-Duty Rule

First, the FDIC argues that defendants' affirmative defenses implicating the FDIC's post-receivership conduct fail as a matter of law under the no-duty rule, which provides that the FDIC

owes no duty to a failed bank's officers or directors.[4]  Defendants respond that the no-duty rule

has been abrogated by the Supreme Court's decision in *O'Melveny & Myers v. FDIC*, 512 U.S. 79

(1994).

"Before the Supreme Court's decision in [*O'Melveny*], there was an emerging consensus

in the circuit courts of appeals . . . that, as a matter of federal common law, affirmative defenses

alleging (for instance) a failure to mitigate damages could not be raised against the FDIC." *FDIC*

*v. Spangler*, No. 10-cv-4288, 2012 WL 5558941, at *2 (N.D. Ill. Nov. 15, 2012) (citation

omitted); *accord FDIC v. Ornstein*, 73 F. Supp. 2d 277, 282 (E.D.N.Y. 1999); *see also FDIC v.*

*Mijalis*, 15 F.3d 1314, 1323-24 (5th Cir. 1994); *FDIC v. Bierman*, 2 F.3d 1424, 1438-40 (7th Cir.

1993).  "This conclusion was called the 'no duty rule,' because it rested on the premise that the

FDIC owed no duty to officers and directors when acting as receiver of a failed financial

institution." *Ornstein*, 73 F. Supp. 2d at 282 (citing *Bierman*, 2 F.3d at 1438).  The no-duty rule

is based on the notions that the public should not bear "the risk of errors of judgment made by its

officials in attempting to save a failing institution," that the FDIC acts in the public interest "to

replenish the insurance fund through the disposition of assets of the failed bank," and that the

FDIC's discretionary decisions "should not be subjected to judicial second guessing."  *Bierman*, 2

F.3d at 1438-39 (citations omitted) (internal quotation mark omitted); *see also Mijalis*, 15 F.3d at

_____

[4]  The FDIC also argues that the no-duty rules applies to affirmative defenses implicating
the FDIC's *pre*-receivership conduct.  In their resistance, defendants state, "Given the absence of
supportive legal authority—and the fact the FDIC itself raises the issue of alleged regulatory
warnings as part of its Complaint—defendants do not currently contend that their affirmative
defenses apply to pre-receivership regulatory action but may ask the court to allow them to revisit
this issue as the law continues to develop."  Defendants' Resistance to Motion, #37, at 18.  In
light of defendants' clarification that their affirmative defenses do not apply to the FDIC's pre-
receivership conduct, I shall confine my discussion of the no-duty rule to post-receivership
conduct.

1323-24 (citing public policy and the need to avoid judicial second-guessing as rationales for the no-duty rule).

In 1994, the Supreme Court decided *O'Melveny*. *O'Melveny*, 512 U.S. 79. In *O'Melveny*, the FDIC, in its capacity as receiver for a failed bank, sued a law firm alleging breach of fiduciary duty and professional negligence in connection with work the law firm had done on real-estate deals for the bank. *Id.* at 81-82. The law firm moved for summary judgment, arguing, among other things, that the knowledge of the bank's corporate officers, who had engaged in fraud, must be imputed to the FDIC, which "stood in the shoes" of the bank. *Id.* at 82. The district court granted summary judgment, but the Ninth Circuit Court of Appeals reversed, finding that "federal common law prevents the attributed knowledge of corporate officers acting against the corporation's interest from being used as the basis for an estoppel defense against the FDIC as receiver." *Id.* at 82-83 & n.2. The Supreme Court disagreed, finding that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") sets forth a comprehensive statutory scheme that did not create any special rule preventing the imputation of knowledge of corporate officers to the FDIC. *Id.* at 85-86. The Supreme Court explained that it would not "adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." *Id.* at 85.

Under the unique circumstances of *O'Melveny*, there was a question as to whether FIRREA applied. *Id.* at 87. FIRREA was enacted in 1989, but the FDIC was appointed as receiver of the failed institution in 1986. *Id.* Accordingly, the Supreme Court went on to decide whether, in the absence of FIRREA, a federal common-law rule precluding imputation of

Page 7 - OPINION AND ORDER

knowledge to the FDIC would supplant any state-law rule. *Id.*  The Supreme Court held that, because the FDIC did not identify "a specific, concrete federal policy or interest that is compromised by [state] law," there was no basis for "the judicial creation of a federal rule of decision." *Id.* at 88-89.

Following *O'Melveny*, the viability of the no-duty rule has been called into question. Only one circuit court of appeals has addressed the no-duty rule post *O'Melveny*. *See FDIC v. Oldenburg*, 38 F.3d 1119, 1121-22 (10th Cir. 1994).  That court adopted the rule but did not mention *O'Melveny*'s potential impact.  The district courts are split on the issue. *See FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1139 (N.D. Ill. 2013) ("Following *O'Melveny*, district courts have split regarding whether *O'Melveny* abrogates the 'no duty' rule."); *Resolution Trust Corp. v. Liebert*, 871 F. Supp. 370, 373 (C.D. Cal. 1994) ("There is an uneven split of authority among district courts that have considered whether the 'no duty' rule survives *O'Melveny*.").  On the one hand, district courts that have found that the no-duty rule did not survive *O'Melveny* conclude that the no-duty rule is judicially created and, in light of *O'Melveny*'s holding, courts cannot supplement FIRREA with a federal common-law rule. *See, e.g., Ornstein*, 73 F. Supp. 2d at 283-84; *FDIC v. Gladstone*, 44 F. Supp. 2d 81, 86 (D. Mass. 1999); *Liebert*, 871 F. Supp. at 371-73; *Resolution Trust Corp. v. Ross*, No. 2:94CV20(P)(S), 1994 WL 534210, at *6 (S.D. Miss. Aug. 26, 1994).  On the other hand, district courts that have found that the no-duty rule is still viable post-*O'Melveny* conclude that the rule in *O'Melveny* does not apply to defenses based on the FDIC's conduct, as opposed to the conduct of third parties. *See, e.g., Resolution Trust Corp. v. Gravee*, No. 94 C 4589, 1995 WL 599056, at *2 (N.D. Ill. 1995) (listing cases); *Resolution Trust Corp. v. Sands*, 863 F. Supp. 365, 370 (N.D. Tex. 1994).

I agree with those cases finding that the no-duty rule did not survive *O'Melveny*.

*O'Melveny* instructs that, where there is a comprehensive and detailed statutory scheme, such as

FIRREA, the court may not supplement it with judicially created rules. *O'Melveny*, 512 U.S. at

85. The FDIC points to no provision of FIRREA creating the no-duty rule, and I am aware of no

such provision. Indeed, as the United States District Court for the Eastern District of New York

suggested in *Ornstein*, provisions of FIRREA in fact appear to be consistent with a duty to

mitigate. *See Ornstein*, 73 F. Supp. 2d at 285 (finding that the receiver's duties to "maximize[]

the net present value return from the sale or disposition of such assets" and to "minimize[] the

amount of any loss realized in the resolution of cases" are consistent with a duty to mitigate

(quoting 12 U.S.C. § 1821(d)(13)(E)). While the FDIC suggested at oral argument that the court

could read a no-duty rule into FIRREA by virtue of the broad discretion granted to the FDIC in

fulfilling its duties and FIRREA's failure to provide a cause of action against the FDIC for failure

to minimize loss, I am unpersuaded that these provisions of FIRREA create a no-duty rule. As

the Supreme Court found in *O'Melveny*, FIRREA is a comprehensive and detailed statutory

scheme. If Congress intended to dispense with state-law defenses such as failure to mitigate

damages, it would have done so explicitly. Thus, in light of the foregoing, I find that the no-duty

rule did not survive *O'Melveny*. Accordingly, I find that defendants' affirmative defenses

implicating the FDIC's post-receivership conduct are not barred under the no-duty rule.

## II.   Discretionary-Function Exception

Next, the FDIC argues that, "[i]ndependent of the 'no duty' rule, the 'discretionary

function exception' to the Federal Tort Claims Act ('FTCA') and Oregon Tort Claims Act

('OTCA') also bars the affirmative defenses related to the conduct of the FDIC or ODFCS."

FDIC's Memo. in Support of Motion, #34, at 8-9. Under the FTCA's discretionary-function exception, the United States has declined to waive its sovereign immunity with regard to claims arising from a federal agency or federal-government employee's exercise or performance of a discretionary function or duty. 28 U.S.C. § 2680(a).[5] Similarly, under the OTCA's discretionary-function exception, the State of Oregon has declined to waive its sovereign immunity with regard to "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Or. Rev. St. § 30.265(6)(c). In *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court held that the FTCA's discretionary-function exception applies to bar negligence claims against regulators of a failed financial institution. As the FDIC notes in its memorandum in support of the motion, several courts have held that the discretionary-function exception applies to bar affirmative defenses based on the FDIC's post-receivership conduct. *See* FDIC's Memo. in Support of Motion, #34, at 9-10 (citing cases); *see also Mahajan*, 923 F. Supp. 2d at 1140-41 (concluding that, while the no-duty rule may have been abrogated by *O'Melveny*, the discretionary-function exception barred the defendant's mitigation of damages, comparative fault, and intervening/superseding cause affirmative defenses).

---

[5] The exception reads in full:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Page 10 - OPINION AND ORDER

I find the FDIC's argument unpersuasive.  As defendants note in their resistance, this case is not brought under the FTCA or the OTCA and the United States and the State of Oregon are not defendants.  It is difficult to see how an exception to the FTCA and the OTCA could apply in a case not brought pursuant to those statutes.  I am unpersuaded by those district courts that have found otherwise.  For instance, in *Mahajan*, the United States District Court for the Northern District of Illinois held that, under the Seventh Circuit's analysis in *Bierman*, the FTCA's discretionary-function exception applied to bar the defendant's affirmative defenses in a suit brought by the FDIC.  *See Mahajan*, 923 F. Supp. 2d at 1140.  Such a conclusion, however, rests on a misinterpretation of *Bierman*.  In *Bierman*, the Seventh Circuit did not find that the discretionary-function exception applied but, rather, found that "excepting the FDIC from . . . affirmative defenses [challenging the FDIC's actions] is consonant with the purpose of the discretionary function exception to the FTCA"—that is, preventing "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Bierman*, 2 F.3d at 1441 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).  In other words, the Seventh Circuit did not find that the discretionary-function exception applied but, rather, was merely additional evidence of an important federal policy warranting a federal common-law rule precluding a defendant from raising, for example, a failure-to-mitigate defense against the FDIC.  *See also Ornstein*, 73 F. Supp. 2d at 282 ("The *Bierman* court found support for its position *by analogizing* to the discretionary function exception to the [FTCA]." (emphasis added)).

In light of my finding above that the court cannot supplement FIRREA with a federal common-law rule, I find *Bierman*'s analogy to the discretionary-function exception unavailing.

Page 11 - OPINION AND ORDER

Because this case is not brought pursuant to the FTCA or the OTCA, those statutes'

discretionary-function exceptions are not applicable and do not act to bar defendants' affirmative

defenses implicating the FDIC's post-receivership conduct or the ODFCS's conduct. *See*

*Ornstein*, 73 F. Supp. 2d at 285 n.4 (finding that the FTCA's discretionary-function exception did

not apply in a suit by the FDIC against a bank's former officers and directors because the "FTCA

applies to tort claims raised against the United States"); *Gladstone*, 44 F. Supp. 2d at 88 (finding

that the discretionary-function exception did not apply because "[t]he FTCA only limits suits

against the Government; it does not preclude state law affirmative defenses when the

Government brings state law claims").  Accordingly, defendants' affirmative defenses are not

barred under the FTCA and OTCA's discretionary-function exceptions.

**III.    Defenses Based on Pre-Receivership Conduct**

        Next, the FDIC requests that the court strike defendants' fifth and seventh affirmative

defenses in light of defendants' acknowledgment that there is no authority to support challenges

to the FDIC's pre-receivership conduct—that is, the FDIC's actions taken pursuant to its

regulatory, rather than its receivership, authority.

        With regard to defendants' fifth affirmative defense, I disagree with the FDIC that it

necessarily challenges the FDIC's pre-receivership conduct.  While defendants allege that

agencies such as the FDIC (acting in its corporate capacity) "failed to take preventative steps to

avoid the disastrous decline in real estate value nationally, the near-collapse of global credit

markets, and the epidemic failure of the financial institutions they were responsible for

regulating," they also allege that the global economic downturn was "unforeseeable by countless

reasonable persons," including the FDIC.  Answer, #30, at 18.  Although it is not entirely clear

from defendants' answer, it appears that defendants are simply arguing that they are not the proximate cause of CRB's loss but, rather, the global economic downturn, which defendants contend no one could have anticipated, is the proximate cause of CRB's loss. Thus, because this affirmative defense does not necessarily challenge the FDIC's regulatory actions, I find it inappropriate to strike it on this ground. As set forth below, however, I find that it is not a proper affirmative defense.

I also find it inappropriate to strike defendants' seventh affirmative defense, which alleges that the FDIC's claims are barred "because of defendants' reasonable reliance on bank examiners and regulators, including but not limited to the FDIC-C and ODFCS, which, prior to the economic collapse in the real estate market, approved of defendants' management practices." Answer, #30, at 19. As defendants explain in their resistance, and as they elaborated at oral argument, the seventh affirmative defense "is a subset of the business judgment rule and . . . does not raise the issue of duty by regulators but reliance by the directors and officers on the regulatory guidance they were being given." Defendants' Resistance to Motion, #37, at 20-21 (emphasis omitted). Thus, I find it inappropriate to strike defendants' seventh affirmative defense.

## IV.    Redundant, Unnecessary, or Inadequately Pleaded Affirmative Defenses

Finally, the FDIC requests that the court strike defendants' sixth and eighth affirmative defenses because they are redundant, unnecessary, or inadequately pleaded. Specifically, the FDIC contends that, because defendants have clarified that their affirmative defenses do not relate to any of the FDIC's pre-receivership conduct, defendants' sixth and eighth affirmative defenses must be alleging that the FDIC "was negligent in its capacity as receiver." Reply in

Page 13 - OPINION AND ORDER

Support of Motion, #40, at 8. The FDIC contends that these defenses are indistinguishable from defendants' twelfth affirmative defense, which alleges that the FDIC, acting in its capacity as receiver, failed to mitigate damages. Thus, the FDIC requests that the court strike defendants' sixth and eighth affirmative defenses as redundant. Moreover, the FDIC argues that the court should strike the sixth affirmative defense because "causation is simply an element of the torts alleged" and, therefore, is not properly raised as an affirmative defense. *Id.* Finally, the FDIC argues that, if defendants argue that their sixth and eighth affirmative defenses "mean something other than failure to mitigate damages, these conclusory affirmative defenses are not properly pleaded with the specificity required under Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Id.* at 9.

I note that, because the FDIC raises these arguments for the first time in its reply brief, I need not consider them. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Nevertheless, because the FDIC could file a new motion raising these arguments, I find it appropriate to address them now in the interest of judicial efficiency.

First, I agree with the FDIC that defendants' sixth affirmative defense, alleging lack of proximate cause, is improper. "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *see also FDIC v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (discussing affirmative defenses). District courts generally agree that lack of proximate cause is not an affirmative defense because it merely challenges an element of the plaintiff's prima facie case. *See J & J Sports Prods., Inc. v. Barwick*, No. 5:12-CV-05284-LHK, 2013 WL 2083123, at

Page 14 - OPINION AND ORDER

*3-4 (N.D. Cal. May 14, 2013) (striking the defendant's affirmative defenses alleging lack of

causation because "they are not affirmative defenses"); *Mahajan*, 923 F. Supp. 2d at 1141

(striking the defendant's affirmative defenses "related to lack of proximate cause and/or the

presence of an intervening cause" because "such issues are properly raised at summary judgment

and trial, not in the form of an affirmative defense"); *FDIC v. Raffa*, 935 F. Supp. 119, 128 (D.

Conn. 1995) (striking the defendants' affirmative defense alleging lack of proximate cause

because "such an assertion is not an affirmative defense because the defendants do not bear the

burden of establishing causation, or lack thereof"); *First Fin. Sav. Bank, Inc. v. Am. Bankers Ins.

Co. of Fla., Inc.*, 783 F. Supp. 963, 969 (E.D.N.C. 1991) ("The issue of proximate causation,

however, is not an avoidance or affirmative defense.  Rather, proximate cause is an element of

the FDIC's *prima facie* case." (citation omitted)).  *But see G & G Closed Circuit Events, LLC v.

Mitropoulos*, No. CV12-0163-PHX DGC, 2012 WL 3028368, at *2 (D. Ariz. July 24, 2012)

("Courts have held, however, that a proximate cause defense pleads matters extraneous to the

plaintiff's prima facie case by showing that someone other than the named defendant proximately

caused the sustained injuries.").  Thus, because lack of proximate cause is not an affirmative

defense, I shall strike it from defendants' answer.  Defendants are, of course, free to argue at the

summary-judgment stage or at trial that the FDIC has failed to carry its burden to prove

proximate causation.

Second, I find that defendants' fifth affirmative defense is likewise improper.  While

defendants may intend to raise the global economic downturn as part of their theory of defense,

such an argument is not an affirmative defense.  *See Mahajan*, 923 F. Supp. 2d at 1141 (striking

a defense alleging an "intervening/superseding cause of general market conditions during the

Page 15 - OPINION AND ORDER

financial downturn in . . . 2008 and 2009" on the basis that it was not a proper affirmative

defense). Accordingly, I shall strike defendants' fifth affirmative defense from the answer.

I decline, however, to strike defendants' eighth affirmative defense. While the FDIC

argues that defendants' eighth affirmative defense is inadequately pleaded, the Ninth Circuit has

yet to determine whether the *Twombly* and *Iqbal* plausibility pleading standard applies to

affirmative defenses. *See Garity v. Donahoe*, No. 2:11-cv-01805-MMD-CWH, 2013 WL

4774761, at *2 (D. Nev. Sept. 4, 2013) ("[T]he Ninth Circuit has not definitively ruled on

whether *Twombly* and *Iqbal* apply to affirmative defenses contained in an answer."); *accord*

*Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 440 (C.D. Cal. 2013); *Roe v. City*

*of San Diego*, 289 F.R.D. 604, 608-09 (S.D. Cal. 2013). While a majority of district courts have

found that it does, *see Dion v. Fulton Friedman & Gullace LLP*, No. 11-2727 SC, 2012 WL

160221, at *2 (N.D. Cal. Jan. 17, 2012), some district courts continue to apply the more lenient

fair-notice standard, *see Garity*, 2013 WL 4774761, at *2.

Putting aside the issue of the specificity with which defendants must plead their

affirmative defenses, I am not inclined at this juncture to strike any of defendants' affirmative

defenses as redundant or inadequately pleaded. *See Garity*, 2013 WL 4774761, at *2-3 (finding

it premature to strike affirmative defenses "given that the discovery period [had] not closed" and

"the [c]ourt [was] not persuaded that under no set of circumstances could the affirmative

defenses at issue succeed"). Discovery in this case is ongoing and, under Federal Rule of Civil

Procedure 15(a), I would freely grant defendants leave to amend their answer to add affirmative

defenses, or plead defenses with greater specificity, based on information obtained during

discovery. I find that the more efficient course of action is to leave defendants' eighth affirmative

defense undisturbed at this time but permit the FDIC to raise this issue again, if it so chooses, at the close of discovery. Accordingly, I deny without prejudice the FDIC's motion to the extent it requests that I strike defendants' eighth affirmative defense.

## CONCLUSION

For the reasons set forth above, the FDIC's motion to strike (#33) is granted in part, denied in part, and denied without prejudice in part. Defendants' fifth, sixth, and thirteenth affirmative defenses are struck from the answer.

Dated this 21st day of January, 2014.

Honorable Paul Papak
United States Magistrate Judge